IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:11-CV-496-RJC-DCK

| | |
|---|---|
| EDWARD LOUIS BEARDEN, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHARLOTTE PALM CORPORATION ) <br> and PALM MANAGEMENT ) <br> CORPORATION, ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM AND** <br> **RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on Defendants' "Motion To Dismiss Plaintiff's Complaint" (Document No. 6). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

## I. BACKGROUND

Plaintiff Edward Louis Bearden, Jr. ("Plaintiff" or "Bearden") filed his "Verified Complaint" (Document No. 1) ("Complaint") in this action on September 1, 2011 in Mecklenburg County Superior Court, against Defendants Charlotte Palm Corporation (the "Charlotte Palm") and Palm Management Corporation ("Palm Management") (collectively "Defendants"), alleging that Defendants constructively discharged him in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). (Document No. 7, p.1). On October 6, 2011, Defendants timely removed the case to this Court. (Document No. 1).

According to the Complaint, Plaintiff is a former employee of Defendants. (Document No. 1-1, pp.4-5). Apparently, Defendants own and/or operate multiple restaurants. (Document No. 1-1, p.6). Plaintiff began employment with Defendants as a bartender in or around November 1997, and was one of the original employees of Defendants when they opened their Charlotte location ("The Palm") in December 1997. (Document No. 1-1, p.6).

Defendants hired Joseph Profeta ("Profeta") as General Manager in 2005. Id. Plaintiff alleges that Defendants "established one of Profeta's goals as 'getting rid' of the 'old' employees." Id. The Complaint further provides that Profeta began fostering an environment which encouraged other managers to mock and disparage Plaintiff as an "old man" and to dismiss any of his concerns as those of a "grumpy old man." (Document No. 1-1, p.7).

Plaintiff also alleges that in May 2009, another employee of The Palm referred to as "the Assistant Chef," while on-duty, instructed Plaintiff to serve him an alcoholic drink. (Document No. 1-1, p.8). Plaintiff refused the Assistant Chef's request, stating that it violated North Carolina law to serve an employee alcohol while on duty. Id. Another manager approached Plaintiff and asked what the problem was after he refused to serve the Assistant Chef an alcoholic drink. Id. Plaintiff explained to the manager that "if she instructed Bearden to serve the Assistant Chef, then he would do it; the manager refused to give such an instruction." Id. Purportedly, the Assistant Chef, who was in a supervisory position over Plaintiff, then ordered Plaintiff to give him a drink, and Plaintiff subsequently complied. Id.

The Complaint further asserts that Profeta called Plaintiff into his office for a meeting, where Profeta and two other managers were waiting. (Document No. 1-1, p.8). At that meeting, Profeta wrote Plaintiff up for insubordination. Id. "The insubordination was for failing to serve alcohol to the Assistant Chef." Id. Plaintiff contends that during the meeting "Profeta became extremely irate"

2

and "rushed across the office and began yelling directly into Bearden's face." Id. Plaintiff then refused to sign the write-up for insubordination and returned to his work as a bartender. (Document No. 1-1, p.9).

Later on that evening, the Assistant Chef again asked Plaintiff for a drink, which Plaintiff refused to provide. Id. Another younger bartender working with Plaintiff did serve an alcoholic drink to the Assistant Chef "while Profeta observed." Id.

On May 23, 2009, Plaintiff resigned "because he was concerned about personal risk and did not want to face further consequences for refusing to follow instructions that were in violation of North Carolina law." (Document No. 1-1, p.9). Plaintiff alleges that he was targeted as part of Defendants' hostile work environment toward older individuals. (Document No. 1-1, p.10). Plaintiff contends that he resigned instead of following an instruction to violate North Carolina law, and therefore, he was constructively discharged. Id. Plaintiff alleges that Profeta and other managers at The Palm "made violating North Carolina law a condition of Bearden's employment, and this condition created an objectively intolerable atmosphere." Id. After Plaintiff's resignation, Plaintiff states that a younger bartender, who was in his mid-thirties and did not have the same qualifications and experience as Plaintiff, replaced Plaintiff as bartender. Id.

"Defendants Motion To Dismiss Plaintiff's Complaint" (Document No. 6) and Memorandum In Support..." (Document No. 7) were filed on October 13, 2011. "Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss" (Document No. 9) was filed October 31, 2011; and Defendants' "Reply Brief In Further Support Of Defendants' Motion To Dismiss Plaintiff's Complaint" (Document No. 10) was filed November 7, 2011.

On December 14, 2011, the undersigned issued an "Order" (Document No. 11) requiring the parties to prepare supplemental briefs addressing the Court's jurisdiction over this matter –

3

specifically, the issue of whether the Complaint was timely filed. Following review of those briefs (Document Nos. 12 and 13), the undersigned is satisfied that the Complaint here was timely filed. As such, immediate review of the pending motion and a recommendation for disposition to the presiding district judge is now appropriate.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

4

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Defendants contend that Plaintiff's Complaint "contains nothing more than 'unadorned, the-defendant-unlawfully-harmed-me' allegations and legal conclusions." (Document No. 7, p.1)(quoting Iqbal, 129 S. Ct. at 1949. As a result, Defendants conclude that Plaintiff has failed to sufficiently plead a claim, and therefore, the Complaint should be dismissed. (Document No. 7).

Plaintiff's sole claim here is that Defendants constructively discharged him in violation of the ADEA by making a violation of North Carolina law a condition of his employment. (Document No. 1-1, pp.10-11).

> Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination by constructive discharge under the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), framework, [Plaintiff] must establish the following four elements: (1) he was constructively discharged; (2) he was at least 40 years old at that time; (3) he was performing his job duties at a level that met [Defendant]'s legitimate expectations at the time of his constructive discharge; and (4) he was treated more harshly than other similarly situated younger employees.

Alba v. Merrill Lynch & Co., 198 Fed.Appx. 288, 294 (4th Cir. 2006).

"An employee is entitled to relief absent a formal discharge, 'if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit.'" Honor v.

5

Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186 (4th Cir. 2004) (quoting Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir.1995)). "Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined." Id. (citing Paroline v. Unisys Corp., 879 F.2d 100, 114 (4th Cir.1989)).

> A plaintiff alleging constructive discharge must therefore prove two elements: deliberateness of the employer's action, and intolerability of the working conditions. Deliberateness exists only if the actions complained of "were intended by the employer as an effort to force the employee to quit." . . . Where, however, all employees are treated identically, no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign. …. Intolerability of working conditions, as the circuits uniformly recognize, is assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign.

Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985) (citations omitted).

Regarding the constructive discharge claim, Defendants argue that it fails because "in order to establish a cause of action under the ADEA, a plaintiff must demonstrate that but for the employer's motive to discriminate against the plaintiff on the basis of age, the plaintiff would not have been discharged." (Document No. 7, p.5) (quoting E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 940); see also Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343, 2350-51 (2009). Defendants contend that Plaintiff has not only failed to demonstrate that his age was the "but for" cause of Defendants' actions, his Complaint fails to state either element of a constructive discharge claim. Id. The undersigned agrees.

First, Defendant argues that Plaintiff fails to assert sufficient factual allegations to demonstrate that his working conditions were objectively intolerable. Id. Here, Plaintiff alleges that he was written-up and yelled at on one occasion after refusing to serve the Assistant Chef a drink, and that other managers were encouraged to mock, disparage, and/or refer to him as an "old

6

man" or a "grumpy old man." (Document No. 1-1, pp. 6-8). The Complaint lacks any specifics about who, or when, or how often Plaintiff might have been mocked, disparaged or called names by Defendants' managers. (Document No. 1-1). As Defendant explains through relevant caselaw:

> The doctrine of constructive discharge protects an employee "from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." . . . The employee "is not, however, guaranteed a working environment free of stress." . . . Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.

Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994) (citations omitted).

Accepting Plaintiff's allegations as true for the purpose of this analysis, some of his co-workers and/or managers actions were indeed unpleasant, and even despicable; however, the undersigned is not convinced that these isolated incidents support a finding that a reasonable person facing these circumstances would feel compelled to resign.

The undersigned notes that according to the Complaint, Plaintiff refused to sign his write-up for insubordination, and returned to his duties; and then later that evening again refused to serve the Assistant Chef a drink. (Document No. 1-1, p.9). There is no suggestion in the Complaint or elsewhere that Plaintiff suffered any consequences or disparaging treatment based on these actions. Contrary to Plaintiff's assertions that the conditions were intolerable, it appears that he went on with his duties.

Next, Defendant argues that Plaintiff's claim fails because he has not shown that Defendants acted with a deliberate intent to force him to quit. (Document No. 7, p.7). Plaintiff alleges that Profeta was hired in 2005 and that Defendants established one of his goals as "getting rid" of "old employees." (Document No. 1-1, p.6). However, the Complaint does not describe whether "old"

meant employees over some specific age, or was defined in years of service to Defendants. In addition, assuming such a goal was established in 2005, the fact that the actions that form the basis of this lawsuit did not occur until 2009 raises doubts about the deliberateness with which Defendants sought to accomplish such a goal. Although the Complaint suggests negative bias toward older employees, it alleges no facts showing discriminatory treatment to any other employee based on age.

The undersigned is not persuaded that calling someone "grumpy" and/or "old" sufficiently supports a deliberate attempt to force him to resign. Likewise, although ordering an employee to violate the law is a far more serious allegation, the undersigned is not convinced that the Assistant Chef's actions were part of a deliberate attempt to get Plaintiff to resign. As noted above, Plaintiff subsequently refused to serve the Assistant Chef without consequences. Moreover, another younger employee was subjected to the same request. (Document No. 1-1, p.6). Where, as here, two employees were presented with identical requests, it is very difficult to surmise that Defendants and/or the Assistant Chef were acting to force Plaintiff to resign. See Bristow v. Daily Press, Inc., 770 F.2d at 1255 ("Where, however, all employees are treated identically, no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign.").

Based on the foregoing, the undersigned finds that Plaintiff has failed to state a plausible claim for age discrimination by constructive discharge. Simply put, Plaintiff's bald assertions that Defendants' actions were based on his age are not sufficiently supported by his own factual allegations. Rather, Plaintiff's own assertions indicate that a younger individual was subjected to the same treatment. To the extent Plaintiff may have been referred to as a "grumpy old man" by other employees, such unpleasantness does not support a finding of an intolerable condition that

8

would force a reasonable person to resign. As such, the undersigned will respectfully recommend that this lawsuit be dismissed.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' "Motion To Dismiss Plaintiff's Complaint" (Document No. 6) be **GRANTED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: February 1, 2012

David C. Keesler
United States Magistrate Judge